AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search
(Name, address or brief description of person, property, or premises to be searched)

District of Columbia Office of Tax and Revenue
941 North Capitol Street
Washington, D.C. 20002

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I, Robert A. Schwinger, being duly sworn depose and say:

I am a  Special Agent with the Federal Bureau of Investigation and have reason to believe
                        (Official Title)

that  (name, description and or location)

on the premises of  See Attachment B,

 in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

See Attachment A

which are (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

evidence of, the fruits of, or instrumentalities of a violation of Title 18 United States Code, Sections 1341, 1349, 2314, 1956, 1957, 1344, and 371.  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES    ☐ NO

Signature of Affiant
Robert A. Schwinger, Special Agent
(202) 278-2068

Sworn to before me, and subscribed in my presence

_____    at Washington, D.C.
Date

_____    _____
Name and Title of Judicial Officer       Signature of Judicial Officer

## AFFIDAVIT

**I.     PRELIMINARY INFORMATION**

1.      I, Andrew Sekela, Special Agent, Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

2.      I am a Federal Agent, authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants issued under the authority of the United States.

3.      I have been a Special Agent (SA) with the FBI, Washington Field Office, for approximately three and a half years, and I have been assigned the responsibility for conducting white collar crime investigations since July 2004.  White collar crimes are considered by the FBI to be those illegal acts characterized by fraud, concealment, or a violation of trust and that are not dependent upon the application or threat of physical force or violence.  I have received formal and informal training regarding the conduct of white collar crime investigations.  Since 2004, I have been assigned as case agent on numerous white collar crime investigations involving violations of federal law that include, but are not limited to, public corruption, government fraud, antitrust violations, bribery, and conspiracy.

4.      The information set forth in this Affidavit is known to me as a result of investigation personally conducted by me and by other law enforcement agents.  Thus, the statements contained in this Affidavit are based in part on information provided by Special Agents (SA's) and other employees of the FBI; SA's from the Internal Revenue Service; SA's from the Government of the District of Columbia (DC), Office of Tax and Revenue (OTR), Criminal Investigation Division (CID); SA's from the DC Office of the Inspector General (OIG); and

1

criminal investigators responsible for Internal Security matters from the DC Office of the Chief Financial Officer (OCFO), Office of Integrity & Oversight (OIO). Statements are also based in part on review of records obtained by federal grand jury subpoenas, documents gathered during the course of the investigation, interviews, consensually recorded conversations, surveillance, and on my experience as a Special Agent.

5.     This Affidavit is being submitted for the limited purposes of supporting criminal complaints and establishing probable cause to obtain search warrants and arrest warrants. Thus, I have not set forth each and every fact learned during the course of the investigation. In addition, where conversations or statements are related herein, they are related in substance and in part except where otherwise indicated.

6.     This Affidavit is respectfully submitted in support of applications for the issuance of the following:

   a)     <u>search warrants</u> for certain premises and electronic mail (e-mail) accounts as set forth in Exhibit A to this Affidavit and included herein by reference; and

   b)     <u>arrest warrants</u> for certain individuals as set forth in Exhibit B to this Affidavit and included herein by reference.

7.     The facts and circumstances set forth below in this Affidavit demonstrate that there is probable cause to believe that there is presently contained within the properties set forth in Exhibit A of this Affidavit, records, files, correspondence, memoranda, computers, computer disks, bank and other financial records, data, and other materials that constitute evidence of, the fruits of, or instrumentalities of criminal violations of Title 18, United States Code (U.S.C.), Section 1341 (Mail Fraud), Section 1349 (Conspiracy to Commit Mail Fraud), Section 1344

(Bank Fraud), Section 371 (Conspiracy), Sections 1956 and 1957 (Money Laundering and Conspiracy to Commit Money Laundering), and Section 2314 (Interstate Transport of Stolen Property).

8.      The facts and circumstances set forth below in this Affidavit demonstrate that there is probable cause to believe that the individuals set forth in Exhibit B of this Affidavit have violated the federal criminal laws, including but not limited to, Title 18, United States Code (U.S.C.), Section 1341 (Mail Fraud), Section 1349 (Conspiracy to Commit Mail Fraud), Section 1344 (Bank Fraud), Section 371 (Conspiracy), Sections 1956 and 1957 (Money Laundering and Conspiracy to Commit Money Laundering), and Section 2314 (Interstate Transport of Stolen Property).

## II.    SUBJECT BACKGROUND INFORMATION

9.      **JAYRECE ELAINE TURNBULL** was born on xxxxxxxx xx, 1973 and has Social Security Number xxx-xx-xx10.   TURNBULL resides at xxxx xxxxxxxxxx xxxxx, Bowie, Maryland 20721.   No employment information or wage history could be located for TURNBULL. TURNBULL has a large number of bank accounts, including accounts in the names of "Chappa Home Services," "Legna Home Services," and variants of those names, among others.   On a D.C. tax return she filed in 2002, TURNBULL described Legna Home Services as a cleaning service.

3

10.     **HARRIETTE WALTERS** was born on xxxxxxxx xx, 1956 and has Social Security

Number xxx-xx-xx84.  HARRIETTE WALTERS resides at xxxx xxxxxx xxx xx, Washington,

DC.  HARRIETTE WALTERS has been employed by the DC Government since 1981 and has

been the Manager of the District of Columbia Real Property Tax Administration Adjustments

Unit (RPTAAU), a part of the District of Columbia Office of Tax and Revenue (OTR) since

2004.  OTR is located at 941 North Capitol Street NE, Washington, DC, 20002.  As Manager of

the RPTAAU, one of HARRIETTE WALTERS's duties is to authorize or decline property tax

refund requests.  HARRIETTE WALTERS's annual salary as a District of Columbia employee

is $81,000.  From September 2000 to the present, HARRIETTE WALTERS spent over $1.4

million at Neiman Marcus, the retailer.

11.     **DIANE GUSTUS** was born on xxxxx xx, 1953 and has Social Security Number xxx-xx-

xx35.  GUSTUS resides at xxxxx xxxxx xxxxxx, Clinton, Maryland.  She is employed by the DC

Government in OTR as a Real Property Program Specialist, with an annual salary of $55,212.

12.     **K.K., nee K.F.,** was born on xxxx xx, 1970 and has Social Security Number xxx-xx-

xx29.  K.F. resides at xxxxx xxxxxxxxxx xxxxx, Upper Marlboro, Maryland.  K.F. is employed

by the DC Government in OTR as a Customer Service Specialist for the DC Office of the Chief

Financial Officer, with an annual salary of $48,241.

13.     **C.W.** was born on xxx xx, 1971 and has Social Security Number xxx-xx-xx25.  C.W.

resides at xxxx xxxxxxxxxx xxxxxxx, xxx. xxx, Oxon Hill, Maryland.  C.W. is employed by the

DC government in OTR as a Real Property Program Specialist, with an annual salary of $55,212.

14.    **G.R.** was born on xxxxxx x, 1958 and has Social Security Number xxx-xx-xx63.  G.R. resides at xxx xxx xxxxxx xx, Washington, DC.  G.R. is employed by the DC government in OTR as an Accounting Technician, with an annual salary of $45,560.

15.    **C.H.** was born on xxxx xx, 1946 and has Social Security Number xxx-xx-xx35.  C.H. resides at xxxx xxxx xxxxxx, Hyattsville, Maryland.  C.H. is employed by the DC government in OTR as a Tax Sales Manager, with an annual salary of $85,860.

16.    **S.J.** was born on xxxxxxx xx, 1961 and has Social Security Number xxx-xx-xx17.  S.J. resides at xxxxx xxx xxxx xxx, District Heights, Maryland.  S.J. is employed by the DC Government in OTR as an Accounting Technician, with an annual salary of $58,631.

17.    **CONNIE L. ALEXANDER** was born on xxxxxx xx, 1955 and has Social Security Number xxx-xx-xx59.  ALEXANDER lives at xxxxx xxxxxxxxxx xxxxx, Bowie, Maryland 20721.[1]  ALEXANDER has a bank account in the name of "Aurora Re Enterprises."

18.    **WALTER R. JONES, JR.** was born on xxx xx, 1974 and has Social Security Number xxx-xx-xx81.  JONES resides at x xxxxxx xxx xxxxx, Essex, Maryland, 21221.  From May 9, 1994 to February 2, 2007, JONES was an employee at Bank of America.  When Bank of America terminated JONES's employment on February 2, 2007, JONES held the position of Assistant Branch Manager at the East Point Mall branch located at 7703 Eastpoint Mall, Baltimore, MD 21224.

---

[1]    ALEXANDER has used the alias "C.L."  TURNBULL has a minor child named A.L.  ALEXANDER and TURNBULL live in the same neighborhood in Bowie, Maryland, within a quarter of a mile of one another.

19.    **RICHARD J. WALTERS** was born on xxxxxxxx xx, 1958 and has Social Security Number xxx-xx-xx79. RICHARD WALTERS resides at xxxx xxxxx xxxx, Bowie, Maryland, 20715. RICHARD WALTERS has a bank account in the name of "Helmet's Plumbing and Heating."

20.    **RICARDO R. WALTERS** was born on xxxxxxxx xx, 1975 and has Social Security Number xxx-xx-xx33. RICARDO WALTERS resides at xxxx xxxxxxx xxxxxx, Fort Washington, Maryland, 20744. RICARDO WALTERS has a bank account in the name of "Ricardo Walters d/b/a Provident Home Services."

21.    In short, HARRIETTE WALTERS, GUSTUS, C.W., K.F., and G.R. are District of Columbia employees. HARRIETTE WALTERS, TURNBULL, RICARDO WALTERS, and RICHARD WALTERS have a family relationship.[2]

## III.    THE SCHEME

22.    There is probable cause to believe that TURNBULL, HARRIETTE WALTERS, GUSTUS, ALEXANDER, JONES, RICHARD WALTERS, and RICARDO WALTERS and others are involved in a scheme to steal tens of millions of dollars from the District of Columbia by approving and issuing fraudulent property tax refund checks from OTR. In sum, there is probable cause to believe that HARRIETTE WALTERS, GUSTUS, and other DC government employees were involved in preparing or approving fraudulent property tax refund requests to generate over forty separate fraudulent refund checks averaging, at this stage of the investigation,

---

[2]    On July 26, 2006, an obituary for H.R.W. was published in the *Virgin Islands Daily News*. The obituary stated that H.R.W. had three sisters (HARRIETTE WALTERS, C.B. and C.S.) one brother (RICHARD WALTERS), two adopted sons (RICARDO WALTERS and E.C.), and two nieces (TURNBULL and S.S.).

over $388,000. Those fraudulent tax refund checks were deposited primarily into sham corporate accounts controlled by HARRIETTE WALTERS's relatives, including TURNBULL's "Chappa Home Services" and "Legna Home Services" accounts, RICHARD WALTERS's "Helmet Plumbing and Heating" account, and RICARDO WALTERS's "Provident Home Services" account. The fraudulently obtained funds were then distributed through cash, cashier's checks and wire transfers to the co-conspirators and family members, who used the funds to, among other things, purchase homes, vehicles, jewelry, luxury clothing and houseware items, and other real and personal property. For example, as noted above, from September 2000 to the present, HARRIETTE WALTERS spent more than $1.4 million at Neiman Marcus. Moreover, some of the money stolen from the District of Columbia has been sent to a money exchange institution in the Dominican Republic that has no bank branches in the United States.

23.    HARRIETTE WALTERS abused her position of authority as Manager of the District of Columbia Real Property Tax Administration Adjustments Unit (RPTAAU) to approve fraudulent property tax return requests. HARRIETTE WALTERS would approve refund request packages that, on first glance, had the veneer of legitimacy. Many of the voucher request packets identified to date in this scheme have various attached pages purporting to justify the property tax refund, including copies of checks payable to the District of Columbia for tax liabilities. On closer inspection, however, the attached pages often do not match the name of the company on whose behalf the fraudulent tax refund was purportedly sought. Moreover, the conspirators often used the names of legitimate companies or their agents as the lead payee name on the check, again to make it appear that the fraudulent requests were true and accurate. Thus, a number of the fraudulent voucher requests list a legitimate (or apparently legitimate) company name but

also list as a co-payee a person or entity connected with the conspiracy, so the check generated through the scheme could be deposited into one of the bank accounts controlled by the conspirators. None of the fraudulent tax return voucher request packets has a legitimate Order from the Superior Court Tax Division directing that a tax refund be paid. Significantly, a number of the vouchers use the exact same documentation to support different vouchers applying to different properties. The conspirators were also aided in their scheme by JONES, who, as an assistant bank manager, was able to assist the conspirators in moving money among and between accounts.

24.     The extent of the scheme and magnitude of the fraud are still being assessed. Based on the investigation by the FBI, OIG, and OTR to date, there is probable cause to believe that the scheme has generated at least 42 fraudulent checks, with a financial loss to the District of Columbia of more than $16 million. That amount may continue to grow as the investigation continues and additional fraudulent checks are discovered. Moreover, of that $16 million, less than $2 million in bank accounts have been located thus far.

### A.     DC Property Tax Refund Process

25.     Under the normal and appropriate process by which property tax refunds are requested and issued in the District of Columbia, a legitimate tax refund occurs only when a taxpayer has paid more in taxes than is owed. Overpayments occur because a property is assessed incorrectly or where taxes are prepaid on a property that is later sold, among other reasons.

26.     A legitimate property tax refund request typically includes a Court order from the Superior Court of the District of Columbia Tax Division indicating the Tax Docket Number and the exact amount of the refund.   Property tax return voucher request paperwork also normally includes details about the property for which a refund is requested, such as the "square" and "lot" numbers of the property on which taxes were assessed and the property owner or agent.

27.     Before a property tax refund check is issued, the request must be signed by four DC employees: (1) an RPTAAU employee,[3] who prepares the tax refund request by completing a Refund Research Form and a SOAR Revenue Refund Voucher form, the latter being a computer-generated form; (2) an RPTAAU manager, who verifies the Refund Research Form and approves the Voucher; (3) the person who enters the data into the disbursement system (from Revenue Accounting); and (4) a Revenue Accounting manager (who verifies that the data was entered correctly).   Only the first two employees' signatures relate to actual review and approval of the tax refund request; the latter two signatures relate only to the accurate entry and verification of data into the DC government disbursement system.   If the taxpayer qualifies for a refund, the RPTAAU submits a request for a refund check to be issued for the taxpayer.

        **B.     Execution of the Scheme**

28.     As detailed below, the conspirators in this scheme obtained millions of dollars in fraudulent property tax refunds by submitting applications for property tax refunds with false information, including false applicant names and false property information.   The scheme succeeded because corrupt District of Columbia government employees knowingly approved fraudulent property tax refund applications.

---

[3]     The RPTAAU is a division of the DC Office of the Chief Financial Officer (OCFO), Office of Tax and Revenue (OTR).

29.    To obtain a refund check from the DC government, the conspirators had to submit property tax refund applications and receive approval of those applications.  As discussed above, to generate a refund check, the scheme required the creation of a refund voucher within the RPTAAU.  The voucher essentially requested the refund of a property tax overpayment.

30.    One of the indicators used by OTR investigators to identify fraudulent refund checks in this case was a comparison of the square and lot number listed on the voucher requesting a property tax refund to the property owner information on record.  If the property owner name did not correspond with the square and lot number, this provided evidence that the refund request may have been fraudulent.  For most, if not all, of the checks issued in this scheme, the payee name on the refund check did not correspond with DC records regarding the owner of a particular square/lot number.   Additionally, the scheme succeeded because HARRIETTE WALTERS used her position of authority to approve each fraudulent refund voucher, knowing that the vouchers were fraudulent.  These approvals resulted in the issuance of fraudulent checks.

31.    Upon approval of a property tax refund voucher by HARRIETTE WALTERS, a refund check was issued by a different branch of OTR.  The fraudulent refund checks generally were not mailed to taxpayers or their representatives.  Instead, the checks were labeled "Hold for Pick-up" and maintained in a DC government office.  One of the conspirators, or someone acting on their behalf, picked up the fraudulent refund checks and arranged for them to be deposited into one of the accounts controlled by the conspirators.  Records obtained from OTR reflect the signature of HARRIETTE WALTERS as having picked up a number of the fraudulent property tax return checks she approved.  The illicit funds were laundered through those accounts and distributed among and between the conspirators.

10

### C.    Fraudulent Checks Identified To Date

32.    Exhibit C to this Affidavit, which is incorporated herein by reference, is a table containing information regarding the fraudulent checks in this scheme that have been identified to date.  Exhibit C demonstrates that, of the 42 fraudulent property tax return checks identified thus far, all were approved by HARRIETTE WALTERS; 33 indicate that they were prepared by GUSTUS; six indicate that they were prepared by G.R.; two indicate that they were prepared by C.W; and one indicates it was prepared by a former employee.

33.    Moreover, of the 42 fraudulent property tax return checks identified thus far, two list "Legna Home Services" or a variant of that entity as a payee or co-payee; 14 list "Chappa Home Services" or a variant as a payee or co-payee; five list "Provident Homes Services" or a variant as a payee or co-payee; three list "Helmet Corporation" or a variant as a payee or co-payee; and two list "Aurora R.E. Enterprises" or a variant as a payee or co-payee.

34.    Once the conspirators obtained the fraudulent property tax refund checks, they deposited them into bank accounts they controlled, including at bank branches in Maryland.  Of the 42 fraudulent property tax refund checks identified thus far, 30 were deposited into accounts with TURNBULL's name listed as an account holder; three were deposited into an account with RICHARD WALTERS's name listed as an account holder; six were deposited into an account with RICARDO WALTERS's name listed as an account holder; and two were deposited into an account with ALEXANDER's name listed as an account holder.

35.    A number of the fraudulent property tax return checks were successfully cashed and deposited even though the payee name on the refund check did not match the account holder's name on the bank account.

36.    Below is a discussion of eight of the checks that appear within Exhibit C, which establish

probable cause to believe that the checks in question are fraudulent.

### 1.    Refund Voucher 2337

| | |
|---|---|
| Date of Check: | March 11, 2005 |
| Check No.: | **6243600** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America)[4] |
| Amount: | $350,000 |
| Payable To: | 1301 LIMITED PARTNERSHIP<br>C/O CHAPPAHOME SERVICES INC.<br>HOLD FOR PICK-UP<br>WASHINGTON DC 20001 |
| Voucher Prepared By: | GUSTUS (February 24, 2005) |
| Voucher Authorized By: | HARRIETTE WALTERS (February 25, 2005) |
| | |
| Deposit Date: | March 13, 2005 |
| Deposited Into: | Bank of America account xxxxxxx3993 |
| Account Owner: | JAYRECE E. TURNBULL d/b/a LEGNA HOME SERVICES |
| Account Opened: | November 5, 2001 |

37.    On February 25, 2005, HARRIETTE WALTERS authorized Voucher 2337, which called

for a refund of real property taxes to an entity identified as "1301 Limited Partnership, c/o

Chappahome Services, Inc."  GUSTUS is indicated as having prepared (on February 23, 2005)

the Refund Research Form for Voucher 2337, and HARRIETTE WALTERS verified that form

on the same date.  Based on HARRIETTE WALTERS's authorization, on March 11, 2005, the

District of Columbia issued Check No. 6243600, payable to "1301 Limited Partnership, c/o

---

[4]    To date, all fraudulent checks identified as part of this scheme were issued from Bank of America Account No. xxxx2547, registered to the Government of the District of Columbia.  This account is used by the DC Government as a "disbursement account."

12

Chappahome Services Inc." in the amount of $350,000.00. The check was designated "Hold for Pick-Up."

38.    Voucher 2337 and its underlying Refund Research Form are materially deficient in several respects that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud. For example:

a)    Voucher 2337 purports to authorize a refund of real property taxes paid for square/lot number 2183-0812. However, available DC property records do not list a property with that square/lot number;

b)    The Refund Research Form lists a different square/lot number (2138-0812) than the square/lot number on Voucher 2337. Square and lot number 2138-0812 is a valid number corresponding to a property located at 2500 Calvert St NW, in Washington DC. The actual taxpayer for this property is "Omni Acquisition Corp., Omni Hotels Treasury," 420 Decker Dr, Irving, TX 75062-3951. The entity that received a property tax refund based on Voucher 2337---"1301 Limited Partnership, c/o Chappahome Services Inc."---has no known association with the Omni Hotel or to square/lot number 2138-0182;

c)    The Refund Research Form does not include legitimate justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $350,000.00. To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to the supporting documentation;

d)      The Refund Research Form is internally inconsistent, as it lists the "tax due" as "$1,220,091.67" at the top of one of the columns in the one-page document, and "$1,320,091.67" at the bottom of that column without any calculations or explanations accounting for the $100,000.00 difference in the two tax-due amounts;

39.     On March 13, 2005, Check No. 6243600, in the amount of $350,000.00, was deposited into Bank of America Account No. xxxxxxx3993, an account under TURNBULL's control.

40.     TURNBULL distributed money from Bank of America account number xxxxxxx3993 to several co-conspirators/beneficiaries of the scheme to defraud, including, but not limited to:

a)      HARRIETTE WALTERS ($205,000.00), the DC Government employee who authorized Voucher 2337;

b)      GUSTUS ($10,000.00), the DC Government employee who is indicated as having prepared the Refund Research Form underlying Voucher 2337;

c)      K.F. ($10,000.00), a DC Government employee who works in a different section of OTR than HARRIETTE WALTERS, GUSTUS, C.W., and G.R.;

d)      C.W. ($8,000.00), a DC Government employee who works in the same office as HARRIETTE WALTERS, GUSTUS,  and G.R.; and

e)      RICARDO WALTERS ($11,200.00), a relative of HARRIETTE WALTERS.

41.     TURNBULL also used Bank of America account number xxxxxxx3993 to make payments that, by inference, directly or indirectly benefited HARRIETTE WALTERS.  For example:

a)    TURNBULL directed payments to a number of HARRIETTE WALTERS's relatives, including H.W. ($4,500.00), the deceased sister of HARRIETTE WALTERS; and N.W. ($10,000.00).

42.    The following chart summaries the various withdrawal transactions that TURNBULL completed to distribute the proceeds of the fraudulently obtained District of Columbia funds:

| Amount | Recipient |
|---|---|
| $18,690 | Adore Jewelry |
| $10,000 | RICARDO WALTERS |
| $1,200 | RICARDO WALTERS |
| $40,000 | HARRIETTE WALTERS |
| $50,000 | HARRIETTE WALTERS |
| $110,000 | HARRIETTE WALTERS |
| $107,500 | TURNBULL<br><br>Cashier's checks issued to:<br><br>A.O. ($10,000);<br><br>C.W. ($8,000);<br><br>H.W. ($4,500);<br><br>Neiman Marcus ($80,000); and<br><br>$5,000 cash. |

| $35,000 | TURNBULL<br><br>Cashier's checks issued to:<br><br>K.F. ($10,000);<br><br>N.W.  ($10,000);<br><br>GUSTUS ($10,000);<br><br>HARRIETTE WALTERS ($5,000). |
|---------|------------------------------------------------|
| $5,000  | Cash                                           |

### 2.    Refund Voucher 2431

| Date of Check: | May 4, 2005 |
|----------------|-------------|
| Check No.: | **6282221** |
| Drawn From: | DC Government bank account number xxxxxxx2547 (Bank of America) |
| Amount: | $329,913.31 |
| Payable To: | BGW, LLP<br>C/O WILKES & ARTIS LLC<br>HOLD FOR PICKUP<br>WASHINGTON DC 20001 |
| Voucher Prepared By: | GUSTUS (April 15, 2005) |
| Voucher Authorized By: | HARRIETTE WALTERS (April 15, 2005) |
|  |  |
| Deposit Date: | May 23, 2005 |
| Deposited Into: | Bank of America account xxxxxxx3993 |
| Account Owner: | JAYRECE E.  TURNBULL,  d/b/a  LEGNA HOME SERVICES |
| Account Opened: | November 5, 2001 |

43.    On April 15, 2005, HARRIETTE WALTERS authorized Voucher 2431, which called for

a refund of real property taxes to an entity identified as "BGW, LLP, c/o Wilkes and Artis,

LLC."  GUSTUS is indicated as having prepared the Refund Research Form for Voucher 2431,

and HARRIETTE WALTERS verified that form on April 14, 2005.  Based on HARRIETTE

WALTERS's authorization, on May 4, 2005, the District of Columbia issued Check No.

6282221, payable to "BGW, LLP, c/o Wilkes & Artis, LLC," in the amount of $329,913.31.  The

check was designated "Hold for Pick-up."

44.     Voucher 2431 and its underlying Refund Research Form are materially deficient in

several respect that, taken separately and in the aggregate, provide probable cause to believe that

the Voucher was created as part of the conspirators' scheme to defraud.  For example:

        a)      Voucher 2431 purports to authorize a refund of real property taxes paid for

square/lot number 0850-0217.  However, available DC property records do not list any property

with that square/lot number;

        b)      The Refund Research Form lists a different square/lot number (0217-0050) than

the square/lot number on Voucher 2431.  Square and lot number 0217-0050 is a valid number

corresponding to a commercial office building located at 1425 K St NW, Washington DC and

owned by BGW LLP.  However, Jayrece E. Turnbull, d/b/a Legna Home Services, the account

into which the $329,913.31 property tax refund was deposited, has no known relationship with

BGW LLP or Wilkes & Artis LLP;

        c)      The Refund Research Form does not include legitimate justification (e.g., a court

order or other formal document explaining the basis for the refund) for a real property tax refund

of $329,913.31.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and

"overpayment" figures that do not correspond to any supporting documentation.  The

documentation includes copies of checks from two different entities, from two significantly

different locations:  (1) a check for $307,580.87 from BGW Limited Partnership, Suite 1200

17

Bender Building, 1120 Connecticut Avenue NW, Washington, D.C. 20036 ; and (2) two checks

from Gables Residential, c/o Gables Residential Services, 777 Yamato Road, Suite 510, Boca

Raton, FL 44542, one in the amount of $223,530.38 and the other in the amount of $71,287.90.

The total of those checks is $602,399.15, a figure that appears nowhere on the Refund Research

Form and does not correspond to the $964,813.31 indicated on the Refund Research Form as

having been paid in property taxes on square/lot 0217-0050;

       d)     The Refund Research Form is internally inconsistent.  In the top of the tax due

column, the Form lists $654,900.00, but at the bottom of that column the tax due is listed as

$634,900.00; but the form provides no calculations explaining that $20,000 difference.

45.     On May 23, 2005, Check No. 6282221, in the amount of $329,913.31, was deposited into

into Bank of America Account No. xxxxxx3993, an account under TURNBULL's control (and

the same account used to deposit the refund check that resulted from Voucher 2337).


### 3.    Refund Voucher 2358

| | |
|---|---|
| Date of Check: | March 30, 2005 |
| Check No.: | **6258376** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America) |
| Amount: | $379,000.00 |
| Payable To: | JAD ASSOCIATES, INC.<br>C/O CHAPPAHOME SERVICING<br>HOLD FOR PICK-UP<br>WASHINGTON DC 20001 |
| Voucher Prepared By: | GUSTUS (March 17, 2005) |
| Voucher Authorized By: | HARRIETTE WALTERS (March 17, 2005) |
| | |
| Deposit Date: | April 22, 2005 |
| Deposited Into: | Bank of America account xxxxxx7785 |

| Account Owner: | JAYRECE TURNBULL d/b/a CHAPA INTERIORS |
| Account Opened: | December 24, 2004 |

46.    On March 17, 2005, HARRIETTE WALTERS authorized Voucher 2358, which called

for a refund of real property taxes to an entity identified as "JAD Associates, Inc., c/o

Chappahome Servicing."  GUSTUS is indicated as having prepared the Refund Research Form

for Voucher 2431 on March 15, 2005, and HARRIETTE WALTERS verified that form on the

same date.  Based on HARRIETTE WALTERS's authorization, on March 30, 2005, the District

of Columbia issued Check No. 6258376, payable to "JAD Associates, Inc., c/o Chappahome

Servicing," in the amount of $379,000.00.  The check was designated "Hold for Pick-Up."

47.    Voucher 2358 and its underlying Refund Research Form are materially deficient in

several respects that, taken separately and in the aggregate, provide probable cause to believe the

Voucher was created as part of the conspirators' scheme to defraud.  For example:

    a)    Voucher 2358 purports to authorize a refund of real property taxes paid for

square/lot number 0223-0021.  However, available DC property records do not list a property

with that square/lot number;

    b)    The Refund Research Form lists a different square/lot number (0322-0021) than

the square/lot number on Voucher 2358.  Square and lot number 0322-0021 corresponds to a

property located at 1101 Pennsylvania Ave., NW, Washington DC and owned by JAD

Associates.  According to government records, JAD Associates already has an agent:  Spaulding

& Slye, not "Chappahome Servicing" or TURNBULL.  Neither 1101 Pennsylvania Avenue,

JAD Associates, nor Spaulding & Slye has a known association with "Chappahome Servicing,"

the entity listed on Voucher 2358 and that received the resulting $379,000.00 tax refund check;

19

c)       The Refund Research Form does not include legitimate justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $379,000.00;

d)       The one supporting document attached to the Refund Research Form is a check from a corporation in Dallas, Texas, First American Controlled Disbursements, that lists in the memo line of the check "Loan 030220739." The date of that check is April 26, 2004, whereas the Refund Research Form lists the date of payment for that amount as March 31, 2004 (and puts that date in the column marked "Batch Number," not the "Date Paid" column). Finally, the Refund Research Form lists a tax amount of $846,719.10 purportedly paid on September 15, 2004, but attaches no check or other documentation supporting such a payment.

48.    On April 22, 2005, Check No. 6258376, in the amount of $379,000.00, was deposited into Bank of America Account No. xxxxxxx7785, an account under TURNBULL's control.

49.    TURNBULL distributed money from Bank of America account number xxxxxxx7785 to several co-conspirators and beneficiaries of the scheme to defraud, including, but not limited to:

a)       HARRIETTE WALTERS ($100,000.00), the DC Government employee who authorized Voucher 2358 (HARRIETTE WALTERS and TURNBULL appear to have shared this amount); and

b)       TURNBULL ($343,000.00), who used $100,000.00 of these funds to purchase four cashier's checks that were sent out of the country. All four of these cashier's checks were deposited through Mellon National Bank, Hileah, Florida, with the endorsement reading as "deposit only agente de cambro commercializadora de capitales, SA xxxxxxx5069." "Cambro Commercializadora de Capitales SA" is a money exchange/check cashing business in the

Dominican Republic that is not licensed to do business in the United States. Therefore, the business does not have branches in the United States. However, the company does have a checking account at Mellon Bank, Account No. xxxxxx5069, that the company uses to process checks it cashes in the Dominican Republic. The company uses a courier service to transport the checks from the Dominican Republic to its branch in Florida. Frequently, people take checks in U.S. dollars to the business and exchange the checks for pesos.

50.    The following chart summarizes the various withdrawal transactions that TURNBULL completed to distribute the fraudulently obtained DC Government funds.

| Amount | Recipient |
|---|---|
| $10,000 | Cash |
| $3,000 | Cash |
| $5,000 | Cash |
| $100,000 | TURNBULL (four cashier's checks issued from these funds) |
| $100,000 | TURNBULL/HARRIETTE WALTERS |
| $225,000 | TURNBULL |

### 4.    Refund Voucher 3715

| Date of Check: | April 26, 2007 |
|---|---|
| Check No.: | **6741804** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America) |
| Amount: | $398,680.00 |
| Payable To: | CHAPPAHOME INC. |

|  | C/O WILKES ARTIS, LLC<br>HOLD FOR PICK-UP<br>QASHINGTON (sic) DC 20001 |
|---|---|
| Voucher Prepared By: | C.W. (April 21, 2007) |
| Voucher Authorized By: | HARRIETTE WALTERS (April 21, 2007) |
|  |  |
| Deposit Date: | May 4, 2007 |
| Deposited Into: | Bank of America account xxxxxx2467 |
| Account Owner: | JAYRECE TURNBULL, d/b/a CHAPA INTERIORS |

51.     On April 21, 2007, HARRIETTE WALTERS authorized Voucher 3715, which called for a refund of real property taxes to an entity identified as "Chappahome Inc., c/o Wilkes Artis, LLC." C.W. is indicated as having prepared the Voucher. HARRIETTE WALTERS verified the Refund Research Form on April 20, 2007. Based on HARRIETTE WALTERS's authorization, on April 26, 2007, the District of Columbia issued Check No. 6741804, payable to "Chappahome Inc., c/o Wilkes Artis, LLC," in the amount of $398,680.00. The check was designated "Hold for Pick-Up."

52.     Voucher 3715 and its underlying Refund Research Form are materially deficient in several respects that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud. For example:

        a)      Voucher 3715 purports to authorize a refund of real property taxes paid for square/lot number 0702-0825. However, available DC property records do not list a property with that square/lot number;

        b)      The Refund Research Form lists the same invalid square/lot number (0702-0825) that is on Voucher 3715. However, one of the documents (a printout of a computer screen, titled "Client Financials") attached to the Refund Research Form references a different square/lot

22

number (0720-0825).  Although 0720-0825 is a valid square/lot number corresponding to property located at 600 2nd Street NE, Washington DC and owned by Second Street Holding LLC Louis Dreyfus Property Group, the property owner has no known association with Chappahome Inc., the entity listed as the primary payee on the refund check;

      c)     The Refund Research Form does not include any justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $398,680.00.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to the supporting documentation.  For example, one of the supporting documents is a check in the amount of $145,145.32 (an amount that nowhere appears on the Refund Research Fund) on the account of DC 17th Street Corporation c/o Insignia/ESG, Inc. (a company with no known association with Chappahome).  Moreover, the check itself has in handwritten print the words "Lot #0093 – Sq #0162"---which does not correspond to the lot/square information listed on the Voucher or Refund Request Form (0702/0825).

53.    On May 4, 2007, Check No. 6741804, in the amount of $398,680.00, was deposited into Bank of America account number xxxxxx2467, an account under TURNBULL's control.

54.    From May 4, 2007 to May 28, 2007, TURNBULL distributed money from Bank of America account number xxxxxx2467 to several co-conspirators/beneficiaries of the scheme to defraud, including, but not limited to:

      a)     HARRIETTE WALTERS ($180,000.00), the DC Government employee who authorized Voucher 3715; and

b)    RICARDO WALTERS ($20,000.00), a relative of HARRIETTE WALTERS.

The following chart summarizes the various withdrawal transactions that TURNBULL completed to distribute the fraudulently obtained DC Government funds.

| Date | Amount | Recipient |
|------|--------|-----------|
| 5/4/07 | $50,000 | HARRIETTE WALTERS |
| 5/8/07 | $20,000 | RICARDO WALTERS |
| 5/10/07 | $50,000 | HARRIETTE WALTERS |
| 5/25/07 | $50,000 | HARRIETTE WALTERS |
| 5/28/07 | $30,000[5] | HARRIETTE WALTERS |

### 5.    Refund Voucher 3755

| | |
|---|---|
| Date of Check: | May 23, 2007 |
| Check No.: | **6756039** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America) |
| Amount: | $541,100.74 |
| Payable To: | HELMET INC, COP [SIC] C/O DAVID FUSS ESQ HOLD FOR PICK-UP WASHINGTON DC 20001 |
| Voucher Prepared By: | C.W. (May 11, 2007) |
| Voucher Authorized By: | HARRIETTE WALTERS (May 11, 2007) |
| | |

---

[5]    This check was endorsed "for deposit only" by Harriette M. Walters and deposited into Bank of America account number xxxxxx5677.  Bank of America records indicate account number xxxxxx5677 is registered to Harriette Monica Walters, xxxx xxxxxx xxxxxx xx, Washington, DC 20015.

| Deposit Date: | June 5, 2007 |
|---|---|
| Deposited Into: | Bank of America account xxxxxx1389 |
| Account Owner: | RICHARD WALTERS d/b/a HELMET'S PLUMBING & HEATING |

55.    On May 11, 2007, HARRIETTE WALTERS authorized Voucher 3755, which called for a refund of real property taxes to an entity identified as "Helmet, Inc., COP, c/o David Fuss, Esq." C.W. is indicated as having prepared the Voucher. HARRIETTE WALTERS verified the Refund Research Form for Voucher 3755 on May 10, 2007. Based on HARRIETTE WALTERS's authorization, on May 23, 2007, the District of Columbia issued Check No. 6756039, payable to "Helmet, Inc., Cop, c/o David Fuss, Esq.," in the amount of $541,100.74. The check was designated "Hold for Pick-Up."

56.    Voucher 3755 and its underlying Refund Research Form are materially deficient in several respects that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud. For example:

a)    Voucher 3755 purports to authorize a refund of real property taxes paid for square/lot number 0002-0067. However, available DC property records do not list a property with that square/lot number;

b)    The Refund Research Form lists a different square/lot number (0220-0067) than the square/lot number on Voucher 3755. Although 0220-0067 is a valid square/lot number corresponding to property located at 875 15th Street, NW, Washington DC and owned by Bowen Building LP, that property owner has no known association with Helmet, Inc. COP, the entity listed on Voucher 3755 and on the resulting refund check. The address listed for Bowen Building LP in government records is in Paramus, New Jersey;

25

c)      The Refund Research Form does not include any justification (u.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $541,100.74.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to supporting documentation.  Indeed, the only documentation attached to the Refund Research Form is three copies of the same exact check to the D.C government in the amount of $1,265,538.75 from Charles E. Smith Real Estate Services LP.  That amount does not appear on the Refund Research Form;

d)      The Refund Research Form lists information about the purported taxpayer that is different from the information on Voucher 3755 and check #6756039.  Specifically, although the voucher and check identify the taxpayer as "Helmet Inc., COP, c/o David Fuss, Esq.," the Research Refund Form refers to "Helmet In (sic) COP, c/o Wilkes Arts, Esq. 1501 K Street Washington DC";

e)      The entries in the "amount paid" column of the Refund Research Form ($852,522.55 and $719,847.86) do not add up to the total "amount paid," which is listed as $2,113,471.15.

57.     On June 5, 2007, Check No. 6756039, in the amount of $541,100.74, was deposited into Bank of America account number xxxxxx1389, an account under RICHARD WALTERS's control and under the name of "Richard Walters d/b/a Helmet's Plumbing & Heating."

6.    **Refund Voucher 3701**

| Date of Check: | May 23, 2007 |
|---|---|
| Check No.: | **6756040** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America) |
| Amount: | $410,000.00 |
| Payable To: | FIRST AMERICAN HOME C/O DAVID FUSS ESQ HOLD FOR PICK-UP WASHINGTON DC 20001 |
| Voucher Prepared By: | GUSTUS (April 5, 2007) |
| Voucher Authorized By: | HARRIETTE WALTERS (April 5, 2007) |
| | |
| Deposit Date: | June 19, 2007 |
| Deposited Into: | SunTrust account xxxx8316 |
| Account Owner: | JAYRECE TURNBULL d/b/a FIRST AMERICAN HOME |

58.    On April 5, 2007, HARRIETTE WALTERS authorized Voucher 3701, which called for a refund of real property taxes to an entity identified as "First American Home, c/o David Fuss, Esq." GUSTUS prepared the Refund Research Form for Voucher 3701, and HARRIETTE WALTERS verified that form. Based on HARRIETTE WALTERS's authorization, on May 23, 2007, the District of Columbia issued Check No.6756040, payable to "First American Home, c/o David Fuss, Esq.," in the amount of $410,000.00. The check was designated "Hold for Pick-Up."

59.    Voucher 3701 and its underlying Refund Research Form are materially deficient in several respects that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud. For example:

27

a)      Voucher 3701 purports to authorize a refund of real property taxes paid for square/lot number 0042-0109.  However, available DC property records do not list a property with that square/lot number;

b)      The Refund Research Form lists a different square/lot number (0214-0109) than the square/lot number on Voucher 3701.  Although 0214-0109 is a valid square/lot number corresponding to property located at 1120 Vermont Ave., NW, Washington DC and owned by 1120 Vermont Avenue Associates, LLP c/o Sylvan C. Herman, that property owner has no known association with "First American Home," the primary payee listed on Voucher 3701 and on the resulting refund check;

c)      The Refund Research Form does not include any justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $410,000.00.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to supporting documentation.  The supporting documents include checks from four different entities, none of which has a known relationship to 1120 Vermont Avenue Associates LLP c/o Slyvan C. Herman or "First American Home":  (1) a check from GMAC Mortgage in the amount of $1,453,607.95; (2) a check from Prudential Asset Resources in the amount of $1,253,642.02; (3) a check from Trammel Crow Company in the amount of $543,390; and (4) a check from TC Midatlantic Inc. in the amount of $417,743;

d)      The memo line on the check from TC Midatlantic Inc. states "Sq.537, Lot 011," which does not correspond to the square/lot numbers on the Voucher or the Refund Research Form;

28

e)     The Trammel Crow and TC Midatlantic checks attached as purported support for Voucher 3701 are also attached as purported support for Voucher 2525, which lists as the payee "Franklin Towers, LLP c/o David Fuss, Esq., Hold for Pick-Up;"

f)     The Trammel Crow and TC Midatlantic checks attached as purported support for Voucher 3701 are also attached as purported support for Voucher 3296, which lists "1120 Vermont Street Associates, Ltd. c/o Chappahome LLC Hold for Pick-Up" as the payee;

g)     The Trammel Crow and TC Midatlantic checks attached as purported support for Voucher 3701 are also attached as purported support for Voucher 3842, which lists "Aurora R.E. Enterprises, Inc. c/o Jeff Nadel, Esq." as the payee;

h)     The GMAC check attached as purported support for Voucher 3701 is also attached as purported support for Voucher 2936, which lists "Thirtenth [SIC] Street Associates c/o Chappahome, Inc., Hold for Pick-Up" as the payee;

i)     The Refund Research Form lists information about the purported taxpayer that is different from the information on Voucher 3701 and check #6756040.  Specifically, although the voucher and check identify the taxpayer as "First American Home, c/o David Fuss, Esq.," the Research Refund Form refers to "1120 Vermont Associates, c/o Chappa Home David Fuss, Esq.."

60.     On or about June 18, 2007, Check No. 62756040, in the amount of $410,000.00, which was created in the District of Columbia on or about May 23, 2007, was deposited into SunTrust bank account number xxxx8316, an account under TURNBULL's control, at the Bowie Town Center Branch of Sun Trust Bank, 4100 Northview Drive, Bowie, Maryland 20716.  This deposit

posted to TURNBULL's account on or about June 19, 2007, and was made at the SunTrust Bank Bowie Town Center Branch, located at 4100 Northview Drive, Bowie, Maryland, 20716.

61.     From June 25, 2007 to September 24, 2007, TURNBULL has made repeated efforts to access the fraudulently obtained money that she deposited into SunTrust bank account number xxxxx8316, by taking the following steps, among others:

a)      On June 25, 2007, TURNBULL wrote a check from SunTrust Bank account xxxx8316 in the amount of $200,000 and attempted to deposit it into Bank of America account number xxxxxx22467 (owned by TURNBULL, d/b/a CHAPA INTERIORS).   The check notation read "reimbursement";

b)      On or about June 27, 2007, a SunTrust Bank employee spoke with David Fuss (the "care of" addressee on check #6756040) and determined that Mr. Fuss is a real estate attorney who is engaged, in part, in obtaining refunds of property tax overpayments for clients in D.C.  Mr. Fuss stated that neither "First American Home" nor TURNBULL is one of his clients;

c)      On July 9, 2007, a SunTrust Bank employee met personally with TURNBULL and advised her that SunTrust Bank needed information about her business to verify her claim to the funds from the property tax refund in Check No. 6756040.  TURNBULL was asked to provide copies of business tax returns, a business license, and any bank references.  TURNBULL accused the SunTrust Bank employee of illegality but nevertheless stated that the nature of her business was making investments in real estate and vacation rental properties abroad;

d)      On July 10, 2007, SunTrust Bank asked TURNBULL to provide documentation, such as articles of incorporation, to prove that she was an authorized agent of "First American Home."  The next day, July 11, 2007, at the Assessor's Office for the Government of Prince

30

George's County, Maryland, TURNBULL filed a trade name application for "First American Home," wherein TURNBULL listed herself as the owner of the business using the trade name "First American Home."   The application described the business as a "project management service" with an address of xxxx xxxxxxxxxx xxxxx, Bowie, Maryland 20721, which is TURNBULL's home address.  A separate form titled "Application for Identification Number" and signed by TURNBULL stated that the business was started in April 2007;

e)      On July 12, 2007, TURNBULL forwarded copies of the Trade Name Application and Application for Identification Number to SunTrust Bank.  SunTrust Bank personnel observed that these documents were filed in Prince George's County Maryland, one day after SunTrust Bank requested them, and more than two weeks after the DC property tax refund Check No. 6756040 (the source of the funds in the SunTrust Bank account) was issued;

f)      TURNBULL made a number of conflicting statements when explaining the nature of the business of "First American Home" to SunTrust Bank.  In addition to claiming she invested in real estate and vacation properties abroad, TURNBULL indicated that the business entity known as "First American Home" was moved from the District of Columbia to Maryland. TURNBULL also stated that Check No. 6756040 was proceeds of a "tax sale."  When asked to elaborate, TURNBULL further described the check as proceeds of a "real estate sale";

g)      In furtherance of the scheme and in response to a request from SunTrust Bank to provide information about "First American Home" and the nature of its purported business with the DC Government, TURNBULL hand delivered a letter on September 17, 2007, to a SunTrust Bank branch in Laurel, Maryland.  The letter was written on Government of the District of

31

Columbia letterhead, dated September 14, 2007, and was addressed to "First American Home, xxxx xxxxxxxxxx xxxxx, Bowie, Maryland 20721;"

h)    The letter, which was signed by C.H., "Real property Tax Sale manger [sic]," states:

"Please be advised that the Real Property Tax Sale Unit at the request of Ms. Jayrece Turnbull, representative for First American Home, is providing confirmation of their participation at our annual real property tax sale.

"We acknowledge that Ms. Jayrece Turnbull, representative for First American Home, has been registered as a tax sale purchaser for several years with the Office of Tax and Revenue, Real Property Tax Administration. Ms. Turnbull is fully registered with the Office of Tax and Revenue as a representative of First American Home for business transactions related to the District of Columbia tax sale, inquiries, refunds and tax sale cancellations.

"If additional information is needed, Ms. Turnbull can contact Ms. S.J., Lead Tax Sale on 202-442-xxxx or Diane Gustus, Lead Program Specialist on 202-442-xxxx."

i)    The letter was mailed in a D.C. Government envelope with a return address of "Government of the District of Columbia, Office of Tax and Revenue, 941 North Capitol Street N.E., Washington, DC 20002."  The envelope had a postmark date September 14, 2007 and a post office cancellation stamp which indicated it was mailed from zip code 20002; it was addressed to TURNBULL d/b/a First American Home, 2206 Bermondsey Drive, Bowie, MD 20721;[6] and

j)    On September 24, 2007, TURNBULL spoke further with a SunTrust Bank employee.  The employee explained to TURNBULL what type of documents she needed to provide to remove the hold from her SunTrust Bank account.  TURNBULL advised the

---

[6]    Based on this use of the mails, your Affiant has probable cause to believe TURNBULL has used the United States mail in furtherance of this scheme to defraud.

32

employee to put the request in writing and send it to her at her electronic mail (email) address:

esmeraldajayt@netscape.net.[7]

### 7.    Refund Voucher 3787

| | |
|---|---|
| Date of Check: | June 15, 2007 |
| Check No.: | **6770965** |
| Drawn From: | DC Government bank account number xxxxxxx2547 (Bank of America) |
| Amount: | $459,990.00 |
| Payable To: | AURORA RE ENTERPRISES, LLC<br>C/O WILKES ARTIS, ESQ<br>HOLD FOR PICK-UP<br>WASHINGTON DC 20001 |
| Voucher Prepared By: | GUSTUS (May 31, 2007) |
| Voucher Authorized By: | HARRIETTE WALTERS (May 31, 2007) |
| | |
| Deposit Date: | June 18, 2007 |
| Deposited Into: | SunTrust account xxxx1382 |
| Account Owner: | AURORA RE ENTERPRISES LLC (signatory authority – ALEXANDER) |
| Account Opened: | May 2007 |

62.    On May 31, 2007, HARRIETTE WALTERS authorized Voucher 3787, which called for

a refund of real property taxes to an entity identified as "Aurora Re Enterprises, LLC, c/o Wilkes

Artis, Esq."  GUSTUS is indicated as having prepared the Voucher on May 31, 2007.  GUSTUS

prepared the Refund Research Form for Voucher 3787, and HARRIETTE WALTERS verified

that form on May 31, 2007.  Based on HARRIETTE WALTERS's authorization, on June 15,

2007, the District of Columbia issued Check No. 6770965, payable to "Aurora Re Enterprises,

---

[7]    Based on this use of an electronic-mail address, your Affiant has probable cause to believe TURNBULL has used this e-mail address in furtherance of this scheme to defraud.

LLC, c/o Wilkes Artis, Esq.," in the amount of $459,990.00.  The check was designated "Hold for Pick-Up."

63.    Voucher 3787 and its underlying Refund Research Form are materially deficient in several respects that that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud.  For example:

a)    Voucher 3787 purports to authorize a refund of real property taxes paid for square/lot number 0063-0886.  However, available DC property records do not list a property with that square/lot number;

b)    The Refund Research Form lists a different square/lot number (0036-0858) than the square/lot number on Voucher 3787.  However, available DC property records do not list a property with that square/lot number;

c)    The Refund Research Form does not include any justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $459,990.00.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to supporting documentation.  For example, the purported supporting documents include items from two different entities, neither of which has a known association with "Aurora Re Enterprises":  (1) a $49,615.04 check from Homecomings Financial, a Dallas, Texas corporation; and (2) a $308,396.91 check stub from Hyatt Corporation, as Agent of Hyatt Equities LLC, d/b/a Park Hyatt Washington.

64.    On June 18, 2007, Check No. 6770965, in the amount of $459,990.00, was deposited into SunTrust bank account number XXXX1382, an account under ALEXANDER's control.

### 8.    Refund Voucher 3842

| | |
|---|---|
| Date of Check: | August 9, 2007 |
| Check No.: | **6805521** |
| Drawn From: | DC Government bank account number xxxxxxxx2547 (Bank of America) |
| Amount: | $345,500.00 |
| Payable To: | AURORA R.E. ENTERPRISES, INC. c/o JEFF NADEL ESQ 8700 GEORGIA AVENUE SILVER SPRING, MD 20815 |
| Voucher Prepared By: | G.R. (July 24, 2007) |
| Voucher Authorized By: | HARRIETTE WALTERS  (July 24, 2007) |
| | |
| Deposit Date: | August 13, 2007 |
| Deposited Into: | SunTrust account xxxx1382 |
| Account Owner: | AURORA    RE    ENTERPRISES    LLC (signatory authority – Connie Alexander) |
| Account Opened: | May 2007 |

65.    On July 24, 2007, HARRIETTE WALTERS authorized Voucher 3842, which called for a refund of real property taxes to an entity identified as "Aurora R.E. Enterprises, Inc. cc/o (sic) Jeff Nadel, Esq." G.R. is indicated as having prepared the Voucher. HARRIETTE WALTERS verified the Refund Research Form for Voucher 3842 on June 24, 2007. Based on HARRIETTE WALTERS's authorization, on August 9, 2007, the District of Columbia issued Check No. 6805521, payable to "Aurora R.E. Enterprises, Inc., c/o Jeff Nadel, Esq.," in the amount of $345,500.00. The check was addressed to be mailed to 8700 Georgia Ave., Silver Spring, MD 20815, but the Voucher used a specific code to indicate that the check was to be held for pick-up.

66.    Voucher 3842 and its underlying Refund Research Form are materially deficient in several respects that, taken separately and in the aggregate, provide probable cause to believe that the Voucher was created as part of the conspirators' scheme to defraud.  For example:

a)    Voucher 3842 purports to authorize a refund of real property taxes paid for square/lot number 0227-0041.   However, available DC property records do not list a property with that square/lot number;

b)    The Refund Research Form lists a different square/lot number (0027-0075) than the square/lot number on Voucher 3842.   However, available DC property records do not list a property with that square/lot number;

c)    The Refund Research Form does not include any justification (e.g., a court order or other formal document explaining the basis for the refund) for a real property tax refund of $459,990.00.  To the contrary, the Refund Research Form lists "tax due," "amount paid" and "overpayment" figures that do not correspond to supporting documentation;

d)    The supporting documentation for Voucher 3842 includes the same TD Midatlantic and Trammel Crow checks that were used to support Vouchers 2525, 3071, and 3296;

e)    The supporting documentation for Voucher 3842 also includes the same GMAC Mortgage check that was used to support Vouchers 2936 and 3701.

67.    On August 13, 2007, Check No. 6805521, in the amount of $345,500.00, was deposited into SunTrust bank account number xxxx1382, an account under ALEXANDER's control.

36

**D.**    **Additional Fraudulent Refund Vouchers and DC Employee Coordination**

68.    On June 30, 2006, HARRIETTE WALTERS approved a voucher, Voucher 3194, that is indicated as having been prepared by G.R.  There is probable cause to believe that this voucher is part of the same fraudulent scheme.  The Voucher purports to be providing a property tax refund for square/lot number 3849-0802, whereas the Refund Research Form purports to be calculating the refund for square/lot number 3894-0820.  As with the other Vouchers described above, the supporting documentation does not match the calculations on the Refund Research Form.  The documentation includes three copies of the same two checks from 1201 F Street LLC III c/o Carr Realty L.P.  Neither 1201 F Street LLC nor Carr Realty has a known association with Bellarmine Home, LLC.

69.    On June 30, 2006, HARRIETTE WALTERS drafted a memorandum to an employee in Financial Management Services, the organizational component responsible for cutting checks, that states:  "Attached, please find the refund voucher [3194] prepared for a refund (Square 0384 Suffix Lot 0804) (sic) [.]  Please process this voucher, as an ***expedited payment*** to be printed no later than July 13, 2006.  Upon completion, would you kindly hold this check for pick-up and contact [G.R.] 202-442-xxxx."

70.    On August 24, 2006, HARRIETTE WALTERS approved Voucher 3296, which is indicated as having been prepared by GUSTUS.  There is probable cause to believe that this Voucher is part of the same fraudulent scheme.  The Refund Research Form indicates that it was prepared by GUSTUS and that it was verified by HARRIETTE WALTERS on August 24, 2006.  The square/lot number for Voucher 3296 is 0412-0109, whereas the square/lot number on the Refund Research Form is 214/109.  The supporting documentation for Voucher 3296 contains

the same TC Midatlantic and Trammel Crow checks used to support the other vouchers, as discussed in greater detail above.

71.    On August 24, 2006, HARRIETTE WALTERS drafted a memorandum to an employee in Financial Management Services that states:  "Attached, please find the refund voucher prepared for a return (Square 0412 Suffix Lot 0109)[.]  Please process this voucher, as an ***expedited payment*** to be printed no later than August 29, 2006[.]  Upon completion, would you kindly hold this check for pick-up and contact Diane Gustus 202-442-xxxx."

72.    Also on August 24, 2006, HARRIETTE WALTERS approved Voucher 3297, which is indicated as having been prepared by GUSTUS. The Refund Research Form is indicated as having been prepared by GUSTUS and it was verified by HARRIETTE WALTERS on August 24, 2006.  There is probable cause to believe that this Voucher is part of the same fraudulent scheme.  The square/lot number on the Voucher is 0611/0073, whereas the number on the Refund Research Form is 116/73.  The payee on the Voucher is 1919 M Street Associates, LLC c/o Provident Home, and the Voucher generated a tax refund check of $375,815.00.  The figures and calculations on the Refund Research Form do not correspond to the supporting documents.  Moreover, the supporting documents have no known association with 1919 M Street Associates LLC or Provident Home.  Thus, one of the supporting documents is a copy of a check stub from Farragut Center; the address of that entity is 1725 Eye Street NW, not 1919 M Street.  The other supporting document is a copy of a check from the Teamsters National Headquarters Building Corporation.  The national headquarters of that union is located at 25 Louisiana Avenue, NW, not 1919 M Street.

38

73.    On August 24, 2006, HARRIETTE WALTERS drafted a memorandum to an employee in Financial Management Services that states:  "Attached, please find the refund voucher prepared for a refund (Square 0611 Suffix Lot 0073)[.]  Please process this voucher, as an ***expedited payment*** to be printed no later than August 29, 2006[.]  Upon completion, would you kindly hold this check for pick-up and contact Diane Gustus 202-442-xxxx."

74.    The District of Columbia employees involved in this scheme have 7:00 a.m. start times at work.

#### E.    Bank of America Employee Involvement

75.    In November and December 2006, WALTER R. JONES, an Assistant Branch Manager for Bank of America at East Point Mall branch located at 7703 Eastpoint Mall, Baltimore, MD 21224, made deposits totaling $91,000 into two Bank of America accounts he owns, account numbers xxx7901 and xxxxxx8788.  Approximately $60,000 of these deposits was in cash. JONES failed to report any of this income on his 2006 tax return, which indicated only $7,274 in taxable income and a tax due and owing of $728.

76.    In or about February 2007, Bank of America security personnel learned that WALTER R. JONES, an Assistant Branch Manager for Bank of America at the East Point Mall branch, was making a large number of high-dollar withdrawal transactions from TURNBULL's Bank of America accounts when TURNBULL was not present.  In the course of its investigation of this issue, Bank of America discovered the following:

    a)    JONES conducted transactions in several Bank of America Accounts owned and/or controlled by TURNBULL, including: (1) account number xxxxxxxx7785 (owned by JAYRECE TURNBULL d/b/a CHAPA INTERIORS); (2) account numbers xxxxxxxx2467 and

xxxxxxxx1359 (owned by JAYRECE E. TURNBULL d/b/a CHAPA INTERIORS); (3) account

number xxxxxxxx2655 (owned by JAYRECE E. TURNBULL); and (4) account number

xxxxxxxx8610 (owned by JAYRECE E. TURNBULL and another individual).

     b)     On or about January 25, 2007, JONES caused the following cashier's checks to be

issued on behalf of TURNBULL:

| Check No. | Recipient | Amount |
|---|---|---|
| 1377274 | HARRIETTE M. WALTERS | $10,000 |
| 1381817 | RICARDO WALTERS | $10,000 |
| 1377273 | J.T., a/k/a J.I. | $10,000 |
| 1377272 | CONNIE ALEXANDER | $10,000 |
| 1377271 | RICARDO WALTERS | $10,000 |

     c)     In or about November and December 2006, JONES deposited approximately

$91,000 into two Bank of America accounts he controlled, account numbers xxx7901 and

xxxxxx8788.  Bank of America investigators found these deposits to be highly irregular because

the amount exceeded substantially JONES's income as an assistant branch manager.

77.    Bank of America security personnel interviewed JONES on February 2, 2007.  JONES

said that TURNBULL conducted her financial transactions at Bank of America exclusively with

JONES.  Whenever JONES transferred from one Bank of America location to another,

TURNBULL followed him to the new location to maintain their ongoing financial relationship.

78.     JONES said TURNBULL authorized him (contrary to Bank of America policy) to carry out Bank of America withdrawal transactions on her behalf.  Accordingly, JONES withdrew money from TURNBULL's accounts without obtaining TURNBULL's signature on the withdrawal paperwork (instead, JONES wrote "per customer request" on the signature line). After obtaining the funds, JONES would wait for one of TURNBULL's designees to pick up the funds, or he would deliver the funds personally to TURNBULL.

79.     JONES told Bank of America security personnel that TURNBULL gave him $145,000.00 to assist him in paying off some debts.  He also provided a signed, written statement, dated February 2, 2007, that reads as follows: " All transactions I, Walter Jones, have done for Ms. Jayrece Turnbull, was (sic) authorized by the customer.  I have done w/d [withdrawal] and other transactions without the customer being present in the office.  She have (sic) given me monies ($145,000 in three months) as gifts."

80.     Shortly after their interview of JONES, Bank of America security personnel spoke with TURNBULL.  TURNBULL stated that she authorized JONES to conduct the transactions in question.  TURNBULL also stated that she gave JONES money, and maintained that Bank of America did not need to know why she had done so.

81.     Bank of America terminated JONES on February 2, 2007 for violating Bank of America's employee standards of conduct.

41

**F.**    **Additional Evidence Relating to Distribution of Embezzled Funds**

82.    On or about July 4, 2006, GUSTUS purchased a 2006 GMC Envoy for $40,456.00 from

Winegardner Pontiac GMC of Prince Frederick, in Prince Frederick, Maryland.  To pay for the

truck, GUSTUS obtained through GMAC a loan in the amount of $34,935.12, which called for

72 payments of $485.21 commencing on August 4, 2006.  Even though she listed her annual

salary on the loan application as $50,761, GUSTUS paid off the entire nearly $35,000 loan by

July 20, 2007.  Payment records reveal that GUSTUS made large payments on this loan through

cashier's checks on the following dates and in the following amounts:

| Date | Amount |
|------|--------|
| August 6, 2006 | $935.12 |
| August 14, 2006 | $4,000 |
| September 21, 2006 | $5,000 |
| October 12, 2006 | $5,000 |
| October 30, 2006 | $5,000 |
| December 8, 2006 | $5,000 |
| March 16, 2007 | $2,000 |
| April 24, 2007 | $2,000 |
| May 23, 2007 | $3,000 |
| June 22, 2007 | $1,000 |
| July 20, 2007 | $2,000 |

42

83.    GUSTUS purchased the cashier's checks she used to make those payments and erase

nearly $35,000 in debt within one year by using proceeds of her scheme with HARRIETTE

WALTERS and the other co-conspirators, through the following series of financial steps:  (1)

HARRIETTE WALTERS withdrew funds from TURNBULL's Chapa Home Services Account

No. xxxxxxx2467; (2) HARRIETTE WALTERS used those funds to purchase cashier's checks

payable to GUSTUS; (3) GUSTUS held onto the cashier's checks from HARRIETTE

WALTERS for a period of time; (4) even though GUSTUS receives her salary through direct

deposit into an account at PNC Bank, GUSTUS would cash the cashier's checks she received

from HARRIETTE WALTERS at a Bank of America branch; and (5) GUSTUS would take

some of the proceeds from the cashier's checks in cash, and she would use the remaining funds

to purchase new cashier's checks for payments on her GMAC loan and for other bills.

84.    As reflected on Exhibit C, during the period of time when GUSTUS made those 11 loan

payments, her name is indicated as having prepared ten vouchers approved by HARRIETTE

WALTERS:  Vouchers 3296, 3297, 3362, 3363, 3395, 3396, 3538, 3701, 3787, 3788.

85.    Based on my training and experience, the training and experience of other investigators

working on this case, and on the facts described above, I know that it is common for individuals

involved in financial crime to maintain financial documents and records relating to their personal

and business affairs.  These documents will show the acquisition, conversion, movement,

secretion, transfer, and distribution of currency, real property, and personal property.  It is also

common for such persons to maintain financial instruments that are the proceeds of, or

facilitating property of, the illegal activity.  These documents, records, and financial instruments

are often retained for long periods of time in secure and accessible locations, including in

residences; businesses; vehicles; work spaces, desks, and file cabinets; office and home

computers and personal communication devices; safe deposit boxes; banks; and storage facilities.

86.     Based on my training and experience, and the training and experience of other agents, I

also know that conspirators in a financial scheme often keep separate sets of books to record the

transfer of funds into and out of the conspiracy and to keep track of how the proceeds are

distributed among and between the conspirators.

87.     Based on the number of fraudulent documents created, the number of purported

supporting documents used to justify large property tax refunds, and the number of supporting

documents that were used to justify more than one property tax refund for different properties,

there is probable cause to believe that there would be evidence of, the fruits, of, or

instrumentalities of the crimes being investigated in this case in the homes, vehicles, and office

spaces of the individuals named above.

88.     Given that the Vouchers used in the scheme were created on computers, there is probable

cause to believe that there will be records or data on personal, business, and office computers

that constitute evidence of, fruits of, or instrumentalities of criminal violations.

89.     The records and documents created and retained by individuals involved in financial

crime also often include correspondence with co-conspirators; U.S. Postal Service and/or next

day carrier services documents and receipts; investor records; contracts; Rolodex files;

photographs; appointment books; notes; airline and other travel tickets and receipts; bank

accounts records; and financial instruments.

90.     Individuals involved in financial crime create such documents, records, and information

by various means, including, but not limited to, computers, printers, telex machines, facsimile

machines, and telephones, telephone answering machines, cellular phones, and cameras. These individuals also maintain such documents, records, and information in various forms, including but not limited to, electrical, magnetic, photographic, and tangible.

91.    In light of the evidence of over one million dollars worth of purchases at high end retail stores such as Neiman Marcus, facilitated at least in part by funds obtained through the scheme to defraud, there is probable cause to believe that there will be jewelry, furs, designer apparel, stemware and housewares, as well as records relating to such purchases, that constitute evidence of, fruits of, or instrumentalities of criminal violations.

## VI.    CONCLUSION

92.    Based on the facts set forth above, your Affiant submits respectfully that there is probable cause to believe that there is presently contained within the properties set forth in Exhibit A of this Affidavit, files, correspondence, memoranda, computers, computer disks, bank and other financial records, and other materials that constitute evidence of, the fruits of, or instrumentalities of criminal violations of Title 18, United States Code (U.S.C.), Section 1341 (Mail Fraud), Section 1349 (Conspiracy to Commit Mail Fraud), Section 1344 (Bank Fraud), Section 371 (Conspiracy), Sections 1956 and 1957 (Money Laundering and Conspiracy to Commit Money Laundering), and Section 2314 (Interstate Transport of Stolen Property). Your Affiant respectfully requests that search warrants be issued for the premises referenced in Exhibit A of this Affidavit, as prayed.

93.    Based on the facts set forth above, your Affiant submits respectfully that there is probable cause to believe that the individuals as set forth in Exhibit B of this Affidavit have violated the federal criminal laws, including but not limited to, Title 18, United States Code (U.S.C.), Section

1341 (Mail Fraud), Section 1349 (Conspiracy to Commit Mail Fraud), Section 1344 (Bank Fraud), Section 371 (Conspiracy), Sections 1956 and 1957 (Money Laundering and Conspiracy to Commit Money Laundering), and Section 2314 (Interstate Transport of Stolen Property). Your Affiant respectfully requests that arrest warrants be issued for the individuals referenced in Exhibit B of this Affidavit, as prayed.

FURTHER YOUR AFFIANT SAYETH NOT.


_____
Andrew Sekela
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to this _____ day of November 2007.


_____
United States Magistrate Judge
District of Columbia

46

## EXHIBIT A

1.    The PREMISES at 6880 Oregon Avenue NW, Washington, DC 20015, known to be the residence of **HARRIETTE MONICA WALTERS**.

2.    The PREMISES at the District of Columbia Office of Tax and Revenue ("OTR"), located at 941 North Capitol Street NE, Washington, DC, 20002; specifically, the computers, office areas, desks, and file storage areas of the following OTR employees: **Harriette Walters**, **Connice Hogue**, **Sheila Jones**, **Diane Gustus**, **Kim Fleet, Geraldine Robinson** and **Cherita Weems**.

> The unit housing the offices of Harriette Walters, Connice Hogue, Sheila Jones, Diane Gustus, Geraldine Robinson and Cherita Weems is located on the 4th Floor.  Upon taking the east side elevators in the building to the 4th floor, the unit can be reached by turning to the right, walking 20 yards, turning left, and walking 5 yards to the unit entrance.  Connice Hogue and Harriette Walters have private offices within that unit, while Sheila Jones, Diane Gustus, Geraldine Robinson and Cherita Weems have cubicles within the unit.  The unit housing the office of Kim Fleet is located on the 1st floor.  Building personnel will be available during the search to identify the work spaces assigned to each employee listed above.

## EXHIBIT B

1    **HARRIETTE WALTERS**

2.    **DIANE GUSTUS**

**EXHIBIT C**

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared By | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 11/4/2004 | 11/5/2004 | 1889 | 6159697 | $333,981.65 | Trammel Crow Corp C/O Legnahomw [sic] Wervices [sic] hold for pick-up Washington DC 20001 | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 11/26/2004 | 12/1/2004 | 1981 | 6177668 | $346,700.00 | Bilkemor LLC Real Estate, Inc. C/O David Fuss, Esq Hold for pick-up Washington, DC 20001 | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 12/17/2004 | 12/20/2004 | 2088 | 6189970 | $367,025.00 | CSC Penn, LLC C/O David Fuss, Esq. hold for pick-up | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 12/17/2004 | 12/23/2004 | 2089 | 6189969 | $319,339.89 | Paost Mass Ave, LLC C/O David Fuss, Esq Hold for pick-up | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 1/3/2005 | 1/5/2005 | 2124 | 6200532 | $340,900.00 | K Street Group, LLC C/O David Fuss, Esq Hold for pick-up | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 12/29/2004 | 12/30/2004 | 2125 | 6199183 | $369,580.16 | Penn Ave Properties Group, LLC C/O Legnahome Services Inc Hold for pick-up | BOA XXXXX3993 Jayrece E Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |

EXHIBIT C

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared By | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 1/20/2005 | 1/21/2005 | 2157 | 6209376 | $338,772.62 | Summit Properties **C/O Chapahome LLC** Hold for pick-up Washington DC 20001 | BOA XXXXX7785 Jayrece Turnbull d/b/a Chapa Interiors | S.G. | Harriette Walters |
| 2/3/2005 | 2/16/2005 | 2233 | 6219483 | $397,007.00 | 111 13th Street LLC **C/O Chappahome Services Inc.** Hold for pickup Washington DC 20001 | BOA XXXXX7785 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 3/11/2005 | 3/13/2005 | 2337 | 6243600 | $350,000.00 | 1301 Limited Partnership **C/O Chappahome Services, Inc.** Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 3/30/2005 | 4/22/2005 | 2358 | 6258376 | $379,000.00 | JAD Associates, Inc. **C/O Chappahome Servicing** Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 5/4/2005 | 5/23/2005 | 2431 | 6282221 | $329,913.31 | BGW, LLP C/O Wilkes & Artis LLC Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 5/26/2005 | 6/17/2005 | 2525 | 6299390 | $356,900.00 | Franklin Towers LLP C/O David Fuss Esq Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |

EXHIBIT C

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared by | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 5/26/2005 | 6/1/2005 | 2526 | 6299389 | $340,000.00 | Lasalle Partnership LLP C/O Wilkes Artis Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 7/6/2005 | 7/7/2005 | 2587 | 6325292 | $410,900.00 | Car Frtz [sic] Company C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXXX7785 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 8/16/2005 | 8/19/2005 | 2654 | 6351562 | $344,625.59 | Breblackthorne Realty C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXXX3993 Jayrece Turnbull d/b/a Legna Home Services | Diane Gustus | Harriette Walters |
| 10/19/2005 | 10/25/2005 | 2822 | 6394635 | $329,913.31 | BGEE LLP/**Chappa Home** C/O Wilkes Artis Hold for pick-up Washington DC 20001 | BOA XXXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 10/19/2005 | 11/7/2005 | 2823 | 6394634 | $373,005.00 | FUND III GMBHAND CO KE LLP C/O Dvid Fuss, Esq Hold for pickup | BOA XXXXXX7785 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Walters |
| 11/15/2005 | 11/30/2005 | 2872 | 6415377 | $422,890.00 | Property Development Corp C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 12/20/2005 | 12/22/2005 | 2908 | 6434068 | $348,000.49 | Collier International LLC C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |

**EXHIBIT C**

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared by | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 1/13/2006 | 1/30/2006 | 2936 | 6446678 | $380,000.00 | Thirteenth Street Associates **C/O Chappahome**, Inc. Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 2/10/2006 | 2/17/2006 | 2971 | 6463505 | $346,800.00 | BBLAKE Company LLC **Chappahome Inc** Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 2/22/2006 | 2/24/2006 | 2973 | 6468798 | $325,000.00 | Srann Company C/O David Fuss Esq Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 3/10/2006 | 3/24/2006 | 3025 | 6480869 | $356,900.00 | 1425 F Street, LLC **Chappahome** C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 4/13/2006 | 4/14/2006 | 3071 | 6502673 | $385,700.00 | Stoladi Property Group **C/O Chappa Home Inc.** Washington DC 20001 United States | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | G.R. | Harriette Walters |
| 5/16/2006 | 5/19/2006 | 3118 | 6521637 | $387,900.00 | MRL Post, LLC **C/O Chappahome Limited** Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | G.R. | Harriette Walters |
| 6/16/2006 | 6/21/2006 | 3143 | 6540925 | $456,990.00 | 12th Street Properties C/O Bellarmin Design Group Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |

EXHIBIT C

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared By | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 8/28/2006 | 9/1/2006 | 3296 | 6588806 | $410,000.00 | 1120 Vermont St., Assoc, LLC **C/O Chappahome LLC** Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 8/28/2006 | 9/1/2006 | 3297 | 6588507 | $375,815.00 | 1919 M Street Assoc, LLC C/O Provident Home Hold for pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | Diane Gustus | Harriette Walters |
| 9/27/2006 | 9/29/2006 | 3362 | 6608809 | $375,800.00 | Lincon (sic) Square LLC C/O Provident Home Ltd Hold for pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | Diane Gustus | Harriette Walters |
| 9/27/2006 | 9/29/2006 | 3363 | 6608808 | $458,670.00 | Lincon (sic) Square LLC **Chappahome Design Ltd** Hold for pick-up | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 10/19/2006 | 12/7/2006 | 3395 | 6622187 | $375,800.00 | Commerce Building Assoc C/O Bellarmine Corporation Hold for Pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | Diane Gustus | Harriette Walters |
| 10/19/2006 | 10/23/2006 | 3396 | 6622186 | $460,000.00 | 1118 Lo Assoc C/O Helmet Corporation Hold for pick-up Washington DC 20001 | BOA XXXXX1389 Richard Walters d/b/a Helmet's Plumbing & Heating | Diane Gustus | Harriette Walters |
| 1/26/2007 | 2/6/2007 | 3514 | 6685161 | $450,683.90 | Second Street Funding C/O Providenthome, Inc. Hold for pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | G.R. | Harriette Walters |

**EXHIBIT C**

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared By | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 2/13/2007 | 2/20/2007 | 3515 | 6694229 | $490,560.54 | HHEMLET [sic] Company,, Inc C/O David Fuss, Esq Hold for pick-up Washington DC 20001 | BOA XXXXX1389 Richard Walters d/b/a Helmet's Plumbing & Heating | G.R. | Harriette Walters |
| 4/5/2007 | 4/10/2007 | 3538 | 6727030 | $465,000.00 | Chappahome, Inc, LLC C/O Jeff Nadel Esq Hold for pick-up Washington DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | Diane Gustus | Harriette Walters |
| 4/26/2007 | 5/9/2007 | 3700 | 6741803 | $468,000.00 | Provident Home Inc C/O 1440 K Street, LLC Hold for pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | G.R. | Harriette Walters |
| 5/23/2007 | 6/19/2007 | 3701 | 6756040 | $410,000.00 | First American Home C/O David Fuss Esq Hold for pick-up Washington DC 20001 | SunTrust XXXX8316 | Diane Gustus | Harriette Walters |
| 4/26/2007 | 5/4/2007 | 3715 | 6741804 | $398,680.00 | Chappahome Inc. C/O Wilkes Artis, LLC Hold for pick-up Qashington [sic] DC 20001 | BOA XXXXX2467 Jayrece Turnbull d/b/a Chapa Interiors | C.W. | Harriette Walters |
| 5/23/2007 | 6/5/2007 | 3755 | 6756039 | $541,100.74 | Helmet Inc, COP [sic] C/O David Fuss Esq Hold for pick-up Washington DC 20001 | BOA XXXXX1389 Richard Walters d/b/a Helmet's Plumbing & Heating | C.W. | Harriette Walters |
| 6/15/2007 | 6/18/2007 | 3787 | 6770965 | $459,990.00 | Aurora Re Enterprises, LLC C/O Wilkes Artis, Esq [sic] Hold for pick-up Washington DC 20001 | SunTrust XXXX1382 Connie Alexander Aurora Re Enterprises LLC | Diane Gustus | Harriette Walters |

EXHIBIT C

| Date Check Issued | Date Check Cashed | D.C. Voucher No. | BOA Check No. | Amount | Payee | Payee Account | Voucher Prepared By | Voucher Authorized By |
|---|---|---|---|---|---|---|---|---|
| 6/15/2007 | 6/18/2007 | 3788 | 6770966 | $399,498.00 | Provident Home, LLC C/O Jeff Nadel, Esq Hold for pick-up Washington DC 20001 | BOA XXXXX0064 Ricardo Walters d/b/a Provident Home Services | Diane Gustus | Harriette Walters |
| 8/9/2007 | 8/13/2007 | 3842 | 6805521 | $345,500.00 | Aurora R.E. Enterprises, Inc. C/O Jeff Nadel Esq 8700 Georgia Avenue Silver Spring MD 20815 | SunTrust XXXX1382 Connie Alexander Aurora Re Enterprises LLC | G.R. | Harriette Walters |
| | | | Total Dollar Amount of Property Tax Refund | $16,322,842.20 | | | | |
| | | | Average Dollar Amount of Property Tax Refund Check | $388,639.10 | | | | |

<u>**AFFIDAVIT**</u>

**I.    PRELIMINARY INFORMATION**

1.    I, Robert A. Schwinger, Special Agent, Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

2.    I am a Federal Agent, authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants issued under the authority of the United States.

3.    I have been a Special Agent with the FBI, Washington Field Office, for approximately nine years, and I have been assigned responsibility for conducting white collar investigations since 2001.  White collar crimes are considered by the FBI to be those illegal acts characterized by fraud, concealment, or a violation of trust and that are not dependent upon the application or threat of physical force or violence.  I have received formal and informal training regarding the conduct of white collar crime investigations.  Since 2001, I have been assigned as case agent on numerous white collar crime investigations involving violations of federal law that include, but are not limited to, public corruption, government fraud, bribery, and conspiracy.

4.    The information set forth in this Affidavit is known to me as a result of investigation personally conducted by me and by other law enforcement agents.

5.    Exhibit A to <u>this</u> Affidavit is an Affidavit and attached exhibits sworn out before the Court on November 6, 2007, to establish probable cause to search premises located at 941 North Capitol Street, Washington, D.C.  Exhibit A to this Affidavit is incorporated herein by reference.

6.     This affidavit provides additional details about the work and office spaces of the District of Columbia employees described in Exhibit A to this Affidavit and Attachment B to Exhibit A to this affidavit:  Harriette Walters, Connice Hogue, Sheila Jones, Diane Gustus, Kim Kit nee Kim Fleet, Geraldine Robinson, and Cherita Weems.

7.     All of these employees work in the District of Columbia Office of Tax and Revenue, which is located at 941 North Capitol Street, Washington, D.C.  That building is a multi-story office building located at the corner of North Capitol Street and K Street.  All the employees have office spaces in the Real Property Tax Administration Adjustments Unit of the Office of Tax and Revenue.

8.     To reach that Unit from the K Street entrance, the elevator in the lobby can be taken to the fourth floor.  After exiting the elevator, there is a sign stating "Real Property Tax Administration" with an arrow pointing to the north side of the building.

9.     If you proceed north until the hallway ends and enter a door on the left, there is a large open office space with multiple cubicles and individual offices.

10.    After entering the room and making an immediate right, and proceeding approximately 30 feet to a cubicle wall, the various offices and open cubicles of the employees described above in Paragraph 6 are located to the right, as described in further detail below.

11.    Geraldine Robinson has two cubicles, one where she most recently worked and one where she worked up until approximately October 31, 2007.

     A.     The first cubicle, her current cubicle, is the second cubicle on the right.  In plain view in the cubicle are three things that identify the cubicle as hers:  (1)  there is a name card on the cabinet with the name "Geraldine;" (2) there is an email tacked above the desk that has the

name "Geraldine Robinson" in the header; and (3) there is a yellow inter-office envelope with the

name "Geraldine Robinson" sitting on the desk.

      B.     The second cubicle, her former cubicle, is the first left after two individual offices

on the left.  Her former cubicle is the first cubicle on the right.  The nameplate on the cubicle

wall says "Gerri Robinson."

      C.     Geraldine Robinson's two cubicles were identified by an OTR employee,

Employee One.  Employee One has been employed at OTR for 32 years.  Harriette Walters is

Employee One's immediate supervisor, and Employee One has worked in close proximity to

Geraldine Robinson.

12.     Sheila Jones's cubicle can be reached by walking to the fourth cubicle on the right, and

turning left. After making that turn, Jones has the first cubicle on the right   There is a nameplate

on the cubicle wall with the name "Sheila Jones."  There is also an email tacked above the desk

that has the name "Sheila Jones" in the header.

13.     Kim Kit, nee Kim Fleet's, cubicle is the sixth possible right (past five entrances to

cubicles and passageways).  After making that right, Fleet's cubicle is the second cubicle on the

right.  On the wall above the desk in the cubicle are three training certificates, each with the name

"Kim Fleet."

14.     Cherita Weems's cubicle is the first left after two individual offices on the left.  Her

cubicle is the first cubicle on the left.  There is a nameplate on the cubicle that says "Cherita

Weems."  On the wall above the desk in the cubicle are multiple training certificates with the

name "Cherita Weems."

15.     Diane Gustus's cubicle is the first left after two individual offices on the left.  Her cubicle

is the second cubicle on the right.  There is a nameplate on the cubicle wall with the name "Diane

Gustus."  There is an email on the cabinet above the desk in her cubicle that has the name "Diane

Gustus" in the header.

16.     Connice Hogue has the first office on the left.  There is a nameplate on the wall next to

the door with the name "Connice Hogue."

17.     Harriette Walters's office was identified by two OTR employees, Employee One and

Employee Two, as being the second office on the left, the office adjacent to Connice Hogue's.

Employee One has been employed at OTR for 32 years and has known Harriette Walters for

approximately ten years.  Harriette is the immediate supervisor of Employee One.  Employee

One believes that Harriette Walters has been in the office identified by Employee One as

belonging to Harriette Walters since the Unit moved to that space in or around 1999-2000.

Employee Two has worked at OTR since 1974, interacts with Harriette Walters on a regular

basis, and knows the office identified as belong to Harriette Walters is in fact Harriette Walters's

office.

FURTHER YOUR AFFIANT SAYETH NOT.

                                                _____
                                                Robert A. Schwinger
                                                Special Agent
                                                Federal Bureau of Investigation

Sworn and subscribed to me this ____ day of November 2007.

                                                _____
                                                Hon. Alan Kay
                                                United States Magistrate Judge
                                                District of Columbia

**ATTACHMENT A**
**LIST OF ITEMS TO BE SEIZED**

1.      Papers, documents, books, manuals, records, receipts, notes, memos, ledgers, bank records, bank statements, canceled checks, check stubs, cash receipts, deposit records, wire transfers and records of wire transfers of money between accounts, United States Currency, financial statements, tax returns, debit/credit card statements and receipts, cashiers check receipts, bank customer records or bank account information.

2.      Any writings, notes or memoranda which show names and/or personal identification numbers.

3.      Any and all electronic devices which are capable of analyzing, storing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data, including but not limited to computer processors, components and peripherals, modems, hard drives, printers, encryption devices, optical scanners and computer related devices including all instructions or programs stored in the form of electronic or magnetic media software, books, written or printed material designed to convey the use or the operation or any hardware and/or software and the contents thereof.

4.      Telephone records of any type including but not limited to telephone bills, address books, answering machines, answering machine tapes, caller identification boxes, digital pagers, cellular telephones, facsimile machines and contents thereof, papers reflecting names, addresses, and telephone numbers of individuals, businesses and associates.

5.      Any and all information and/or data stored in the form of magnetic or electronic coding on the computer media and the contents thereof which includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disks, tapes, laser disks, video cassettes or any other magnetic media capable of being read by computer and the contents thereof.

6.      Safe deposit box keys and records relating to safe deposit boxes.

7.      Indicia of possession of the premises.

1

8.    Cash.

9.    Jewelry, fur coats, artwork, purses, or other high value items.

10.   Self-storage keys and records relating to self-storage facilities.

# ATTACHMENT B

The premises at the District of Columbia Office of Tax and Revenue (OTR), located at 941 North Capitol Street, Washington, D.C. 20002; specifically, the computers, office areas, desks, and file storage areas of the following OTR employees:  **Harriette Walters, Connice Hogue, Sheila Jones, Diane Gustus, Kim Kit nee Kim Fleet, Geraldine Robinson,** and **Cherita Weems**.

All of these employees work in the District of Columbia Office of Tax and Revenue, which is located at 941 North Capitol Street, Washington, D.C.  That building is a multi-story office building located at the corner of North Capitol Street and K Street.  All the employees have office spaces in the Real Property Tax Administration Adjustments Unit of the Office of Tax and Revenue.

To reach that Unit from the K Street entrance, the elevator in the lobby can be taken to the fourth floor.  After exiting the elevator, there is a sign stating "Real Property Tax Administration" with an arrow pointing to the north side of the building.

If you proceed north until the hallway ends and enter a door on the left, there is a large open office space with multiple cubicles and individual offices.

After entering the room and making an immediate right, and proceeding approximately 30 feet to a cubicle wall, the various offices and open cubicles of the employees described above are located to the right, as described in further detail below.

Geraldine Robinson has two cubicles, one where she most recently worked and one where she worked up until approximately October 31, 2007.

A.    The first cubicle, her current cubicle, is the second cubicle on the right.  In plain view in the cubicle are three things that identify the cubicle as hers: (1)  there is a name card on the cabinet with the name "Geraldine;" (2) there is an email tacked above the desk that has the name "Geraldine Robinson" in the header; and (3) there is a yellow inter-office envelope with the name "Geraldine Robinson" sitting on the desk.

B.    The second cubicle, her former cubicle, is the first left after two individual offices on the left.  Her former cubicle is the first cubicle on the right. The nameplate on the cubicle wall says "Gerri Robinson."

C.    Geraldine Robinson's two cubicles were identified by an OTR employee, Employee One.  Employee One has been employed at OTR for 32 years.  Harriette Walters is Employee One's immediate supervisor, and Employee One has worked in close proximity to Geraldine Robinson.

Sheila Jones's cubicle can be reached by walking to the fourth cubicle on the right, and turning left. After making that turn, Jones has the first cubicle on the right   There is a nameplate on the cubicle wall with the name "Sheila Jones." There is also an email tacked above the desk that has the name "Sheila Jones" in the header.

Kim Kit, nee Kim Fleet's, cubicle is the sixth possible right (past five entrances to cubicles and passageways).  After making that right, Fleet's cubicle is the second cubicle on the right.  On the wall above the desk in the cubicle are three training certificates, each with the name "Kim Fleet."

Cherita Weems's cubicle is the first left after two individual offices on the left.  Her cubicle is the first cubicle on the left.  There is a nameplate on the cubicle that says "Cherita Weems."  On the wall above the desk in the cubicle are multiple training certificates with the name "Cherita Weems."

Diane Gustus's cubicle is the first left after two individual offices on the left. Her cubicle is the second cubicle on the right.  There is a nameplate on the cubicle wall with the name "Diane Gustus."  There is an email on the cabinet above the desk in her cubicle that has the name "Diane Gustus" in the header.

Connice Hogue has the first office on the left.  There is a nameplate on the wall next to the door with the name "Connice Hogue."

Harriette Walters's office was identified by two OTR employees, Employee One and Employee Two, as being the second office on the left, the office adjacent to Connice Hogue's. Employee One has been employed at OTR for 32 years and has known Harriette Walters for approximately ten years. Harriette is the immediate supervisor of Employee One. Employee One believes that Harriette Walters has been in the office identified by Employee One as belonging to Harriette Walters since the Unit moved to that space in or around 1999-2000. Employee Two has worked at OTR since 1974, interacts with Harriette Walters on a regular basis, and knows the office identified as belong to Harriette Walters is in fact Harriette Walters's office.